Winton LEMON, Plaintiff-Appellant,

v.

BANK LINES, LTD.,
Defendant-Appellee.

No. 78-2257.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1981.

Rehearing Denied Oct. 30, 1981.

Edwin D. Robb, Jr., James M. Thomas, Savannah, Ga., for plaintiff-appellant.

Hunter, Houlihan, Maclean, Exley, Dunn & Connerat, Ralph O. Bowden, III, Robert S. Glenn, Jr., Savannah, Ga., for defendant-appellee.

Before GOLDBERG, FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiff, Winton Lemon, a Savannah longshoreman, brought this action against defendant, Bank Lines, Ltd., a shipping line, pursuant to section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act. Lemon sought recovery for injuries suffered while unloading one of Bank Lines, Ltd.'s ships, the HAZELBANK. At trial, the jury determined that the defendant was negligent in the method and manner of stowing cargo, and found that this negligence proximately caused the plaintiff's injury. Following the jury's verdict, the judge granted defendant's motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial. In light of the recent Supreme Court opinion in *Scindia Steam Navigation Co. v. De Los Santos*, —— U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), we find that the district judge acted improperly in granting a judgment notwithstanding the verdict. Therefore, we reverse the judgment of the district court and remand.

## I. *BATTEN DOWN THE HATCHES: THE FACTS OF THE CASE*

On July 9, 1979, Winton Lemon was injured while unloading rolls of burlap and bales of jute from the HAZELBANK. The rolls of burlap had been loaded in hold No. 2 on the ship in a manner which had created gaps between the rolls and the skin of the ship. In addition, a gap of five feet had been created between the uppermost rolls and the top of the hold. Therefore, bales of jute had been dumped as "filler cargo" in the remaining overhead space as well as into the voids which had developed along the sides of the hold.

Plaintiff Lemon was unloading the No. 2 hold when he noticed that one of the stacks of bales seemed unstable. Fearing that the bales of jute might topple and injure someone, Lemon decided to remedy the precarious situation. Lemon crawled over the top of the cargo to the skin of the ship where he planned to descend from the vessel's sweat battens[1] to a position behind the bales. As Lemon was descending, one of the sweat battens broke. Both Lemon and the bales of jute toppled. Lemon was seriously injured.

At trial, the jury determined that defendant Bank Lines, Ltd. breached a duty owed to longshoremen to exercise reasonable care in providing a reasonably safe work place, by failing to warn the stevedore[2] of the potentially dangerous condition in the hold. However, the district judge, 449 F.Supp. 1016, granted a judgment notwithstanding the verdict ("j. n. o. v.") noting that under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"),[3] the shipowner is not liable to a longshoreman employed by an independent stevedore for injuries which occur when the stevedore has complete charge and control of the unloading operation. In the alternative, the dis-

---

1. Sweat battens are wooden dividers which are placed between the cargo and the hull of the ship to prevent condensation on the hull from damaging cargo.

2. Stevedores are hired by vessel owners to load and unload ships. The stevedore employs longshoremen to perform the loading and unloading operations.

3. 33 U.S.C.A. §§ 901–950 (West 1976 and Supp. I 1977).

trict judge granted the defendant's motion for a new trial on the grounds that the verdict was against the weight of the evidence.

## II. *THE SQUALL: WHICH STANDARD OF NEGLIGENCE?*

An injured longshoreman must navigate the channels of the LHWCA before he can drop anchor in the vessel owner's pocketbook and claim his booty. Prior to 1972, the criteria for recovery from a shipowner for onboard accidents had been whether the vessel was unseaworthy. However, this standard proved unsatisfactory since it imposed liability on vessel owners for injuries caused solely by the negligence of the stevedore. Although vessel owners were entitled to indemnification in such situations, this two step approach was inefficient. Hence, in 1972 the LHWCA was amended to include section 905(b) [4] and to limit the owner's liability to those injuries caused by the "negligence of the vessel." The purpose of the modification was "to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore ... and not to endow him with any special maritime theory of liability or cause of action...." [5] The new standard of recovery differed from the old standard in that the old standard allowed the imposition of liability without

fault whereas the new standard imposed liability only for the failure of the vessel or her owner to exercise reasonable care. [6]

While section 905(b) imposes a negligence theory of recovery, it fails to define the parameters of such a standard; and while the pages of tort law provide some general standards for admiralty suits, once they become wet with brine they do not contain all the answers. The sometimes unique tort standards of admiralty law must themselves be addressed in order to determine liability in cases like the one at bar. The Supreme Court has recently addressed these standards in some detail in *Scindia Steam Navigation Co. v. De Los Santos,* —— U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

In *De Los Santos,* a winch, part of the ship's gear, was being used to lower wooden pallets containing sacks of wheat into the hold. The braking mechanism of the winch malfunctioned causing a pallet to strike a pallet jack [7] and spilling many sacks of wheat. The winch operator hoisted the pallet about 15 feet while Santos and the other men attempted to clear the spilled sacks. Some minutes later, however, more sacks fell from the pallet, striking and injuring Santos.

The district court in *De Los Santos* relied on Restatement (Second) of Torts §§ 343 and 343A (1965) [8] to define the duty of the

4. 33 U.S.C.A. § 905(b) (West 1978) provides:
   In the event of injury to a person covered under this chapter caused by the negligence of the vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements of warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be

based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

5. H.R.Rep. No. 1441, 92nd Cong., 2d Sess., *reprinted in* U.S. Code Cong. and Ad. News, 1972, p. 4698.

6. *Slaughter v. S. S. Ronde, Fyffers Group, Ltd.,* 390 F.Supp. 637 (S.D.Ga.1974), *aff'd,* 509 F.2d 973 (5th Cir. 1975).

7. A pallet jack is a small, wheeled, cartlike vehicle with prongs on the front like a forklift used by longshoremen to cart a pallet load to the wings of the hold.

8. Section 343 provides:
   A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

shipowner. In so doing, the district court noted:

> ... a shipowner is not liable for dangerous conditions created by the stevedore's negligence while the stevedore is in exclusive control over the manner and the area of the work ..., nor is the shipowner under a duty to warn the stevedore or his employees of dangers or open and obvious defects which are known to the stevedore or his employees or which are so obvious or apparent that they may reasonably be expected to discover them.

*Id.* 101 S.Ct. at 1619. Based on the application of this standard, the district court granted defendant's motion for summary judgment. The Court of Appeals reversed and remanded, applying a "reasonable care under the circumstances"[9] approach, which imposed a duty on the shipowner to search for and discover hazardous conditions even after the vessel is turned over to the stevedore.

Dissatisfied with the attempts of both lower courts to formulate a proper rule to govern in this area, the Supreme Court shaped a third and now controlling standard. In so doing, the Court refused to adopt Restatement Sections 343 and 343A since these sections incorporated notions of contributory negligence and assumption of risk that are inapplicable under the maritime law. *De Los Santos, supra,* 101 S.Ct. 1614, 1622, n. 14. By treating the relationship between shipowner and longshoreman like that between possessor of land and invitee, the Restatement's standard enabled a shipowner to escape liability despite his negligence merely by proving that the injury-producing hazard was "open and obvious." Yet, the "openness" or "obviousness" of a hazard will merely establish whether the injured employee was contributorily negligent, or alternatively, whether that employee had assumed the risk presented by the hazard, in taking the actions which lead to the accident. Hence, a longshoreman who is contributorily negligent in missing the "open and obvious" or who assumes the risk created by the "open and obvious" would lose his right to recover despite the vessel owner's negligence. Therefore, by incorporating a consideration of the "openness" and "obviousness" of risk into the definition of the vessel owner's negligence, the Restatement's standard improperly injected considerations of an employee's contributory negligence or assumption of risk into the admiralty law cause of action.

The Supreme Court also rejected the Court of Appeals standard of negligence requiring "reasonable care under the circumstances." *Id.* 101 S.Ct. at 1622. By imposing a responsibility on the shipowner to use reasonable care to discover and remedy dangerous conditions even during the loading and unloading of the vessel, the Court of Appeals standard imposed the same type of nondelegable duty upon the shipowner which the 1972 amendments to

---

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against danger.

Section 343A continues:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of a public utility, is a factor of importance indicating that the harm should be anticipated.

**9.** The standard employed by the Court of Appeals provided:

> A vessel is subject to liability for injuries to longshoremen working on or near the vessel caused by conditions on the vessel if, but only if, the shipowner
>
> (a) knows of, or by the exercise of reasonable care would discover, the condition, and should realize that it involves an unreasonable risk of harm to such longshoremen, and
>
> (b) the shipowner fails to exercise reasonable care under the circumstances to protect the longshoremen against the danger.

*Scindia v. De Los Santos,* 598 F.2d 480, 485 (9th Cir. 1979).

the LHWCA sought to eliminate. Section 905(b) clearly established that the shipowner is responsible only for those dangerous conditions which arise from the negligence of the vessel. The Court recognized that it was the stevedore, and not the shipowner who was the longshoreman's employer and therefore responsible for maintaining safe working conditions during cargo operations pursuant to 33 U.S.C. § 941.[10] Hence, it was the stevedore who bore the burden of discovering any hazard created during the stevedoring operations.

Having rejected the two unacceptable standards of negligence, the Supreme Court proceeded to chart a course which would safely guide all subsequent parties through the troubled waters of section 905(b). The court found that the shipowner

has a duty with respect to the condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations; and if he fails to at least warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

*Id.* 101 S.Ct. at 1622.

■ The shipowner is therefore responsible for eliminating dangerous conditions which exist at the outset of the stevedoring operations, *id.* at 1621–22, but has "no duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations." *Id.* at 1624. It is the stevedore who must see to the safety of cargo operations.

■ The Supreme Court did recognize one exception to this general rule. Although the vessel owner is usually entitled to rely on the stevedore's judgment that

equipment is reasonably safe for continued use during stevedoring operations, the vessel owner is not entitled to rely on the stevedore's judgment when such use is "so obviously improvident" that the vessel owner if he knows of the defect and the stevedore is continuing to use it, should realize it "presents an unreasonable risk of harm to the longshoreman." *Id.* at 1626. Under these circumstances the vessel owner has a duty to intervene and repair the dangerous condition as if it had existed from the outset. The Court's exception furnishes an incentive to the shipowner to correct those dangerous conditions he recognizes in addition to those hazards which he actually creates. The Court's conclusion, therefore, removes most, but not all, responsibility from the vessel owner regarding cargo operation safety.

### III. *STEADY AS SHE GOES: THE APPLICATION OF DE LOS SANTOS*

In the current case, the district court granted a motion for judgment notwithstanding the verdict and an alternative motion for a new trial in favor of defendant Bank Lines, Ltd., the owner of the HAZEL-BANK. The lower court relied on the notion that the stevedore's awareness of and degree of control over a dangerous situation determined the ability of the longshoreman to recover against the shipowner for personal injuries. The trial judge noted that the jury verdict in favor of the plaintiff "was in the teeth of the narrowed liability of shipowners that Congress intended to establish by the 1972 amendment to the LHWCA." As noted above, the 1972 amendment to the LHWCA, section 905(b), replaced the old "seaworthiness" standard of liability with the negligence standard described in *De Los Santos.* The trial judge cited *Brown v. Mitsubishi Shintaku Ginko,* 550 F.2d 331 (5th Cir. 1977):

10. 33 U.S.C.A. § 941 (West 1978) provides in relevant part:

(a) Every employer shall furnish and maintain employment and places of employment which shall be reasonably safe for his employees in all employments covered by this chapter and shall install, furnish, maintain, and use such devices and safeguards with

particular reference to equipment used by and working conditions established by such employers as the Secretary may determine by regulation or order to be reasonably necessary to protect the life, health, and safety of such employees, and to render safe such employment and places of employment, and to prevent injury to his employees.

It would be unreasonable to expect members of the ship's crew, who are bound to have less knowledge about the stevedoring operations than the stevedore's own employees, to recognize and remedy a nonobvious, technically dangerous situation where the stevedore's own supervisory personnel would not. Finally, not only was the plaintiff here acutely aware of the hazardous condition, but he was the person best able to appreciate the potential consequences of the danger and he was also in a position of personal control over it.

and *Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837, 839 (2d Cir. 1977):

The shipowner is not the party best able to prevent accidents in situations such as presented here. It is the stevedore who, by the exercise of proper care, can best safeguard against unknown dangers lurking below in the deep recesses of the ship.

in support of his interpretation of section 905(b).

■ However, in light of *De Los Santos*, considerations of the stevedore's awareness of and degree of control over a dangerous situation are irrelevant when the existence of the dangerous condition is attributable to the negligence of the shipowner. These considerations, which lie at the heart of the passages cited above from the *Brown* and *Munoz* cases and which were relied on by the district court below, serve to inject notions of contributory negligence and assumption of risk which the Supreme Court disapproved in *De Los Santos*. The Supreme Court clearly established that the ability of a longshoreman to recover cannot turn on who was in the best position to recognize and remedy a dangerous condition when that condition was created by a vessel owner who knew or should have known of its existence prior to the stevedore's operations. The Court specifically imposed a duty on the shipowner to at least warn the stevedore of any dangerous condition, existing at the outset of the stevedoring operations, of which the shipowner should have been aware through the exercise of reasonable care.

■ In this case, the jury found that the defendant shipowner was negligent in the method and manner of stowing the cargo and that the negligence proximately contributed to the plaintiff's injury. The evidence supporting their verdict included the fact that the chief mate had actual knowledge of the improper loading technique and failed to take actions to either correct the stowage or warn the plaintiff or his coworkers of the dangerous conditions contained within the stow. Considering the appropriate interpretation of section 905(b) provided by *De Los Santos*, and viewing the evidence in a light most favorable to the plaintiff,[11] we conclude that the district court erred in granting a j. n. o. v. in the case at bar.

The trial judge also granted defendant's motion for a new trial ruling that the verdict was against the weight of the evidence. In support of this conclusion, the trial judge cited a significant amount of testimony indicating that HAZELBANK's cargo was not stowed in a negligent manner and that the manner of stowing the cargo did not proximately cause Lemon's injury.

■ A trial judge's decision to grant a new trial may be reversed only for a clear abuse of discretion. *Valley View Cattle Co. v. Iowa Processors, Inc.*, 548 F.2d 1219, 1220 n. 2 (5th Cir.), *cert. den.*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977). Based on our review of the record in this case, we do not feel that the trial judge committed an abuse of discretion in granting the motion for a new trial.

11. The test for determining whether to grant a motion for judgment notwithstanding the verdict is the same as that applied to a motion for directed verdict. The trial court originally, and this Court on appeal, must examine the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. "[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

The case was submitted to the jury on two possible theories of the shipowner's liability: (1) negligence in the method and manner of stowing the cargo, and (2) negligence in the provision of unsafe equipment, including sweat battens. The jury rendered a special verdict in which it found that the shipowner was negligent with regard to the method of stowing the cargo, but that the vessel owner was not negligent with regard to the provision of the sweat battens. Therefore, in granting the motion for a new trial, the trial judge ruled that "the question of the shipowner's negligence in furnishing a defective sweat batten will not be relitigated in the light of the finding of the jury as to that claim." Since the two theories of negligence rested on completely separate and independent acts and, since the question of Bank Lines, Ltd.'s liability for the method of stowage aboard the vessel is an issue that is distinct from the question of Bank Line's liability with regard to the sweat batten which broke under Lemon's weight, we affirm the decision not to grant a new trial on the issue of liability for defective sweat battens. *See United States v. F. D. Rich Co.*, 520 F.2d 886, 889–890 (9th Cir. 1975); *see generally, Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Therefore, this issue shall not be relitigated on remand.

## IV. *LAND HO: CONCLUSION*

The Supreme Court in *De Los Santos* clarified the law controlling the ability of a longshoreman to recover for injuries caused by the negligence of a shipowner. Since the decision to grant the j. n. o. v. in the current case directly contradicted the message of *De Los Santos*, we reverse the trial court's grant of the j. n. o. v. However, since the lower court's ruling that the jury's verdict was against the great weight of the evidence did not represent an abuse of discretion, we remand the case for a new trial. In so doing, we note that the issue of Bank Lines, Ltd.'s liability for the provision of a defective sweat batten should not be relitigated.

**REVERSED AND REMANDED.**