**Joseph W. MUSIAL, Plaintiff-Appellee Cross-Appellant,**

v.

**A & A BOATS, INC. and Blue Ridge Insurance Company, Defendants-Appellants Cross-Appellees.**

**No. 81–3583**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1983.

Voorhies & Labbe, D. Mark Bienvenu, Lafayette, La., for defendants-appellants.

Scofield, Bergstedt, Gerard, Mount & Veron, J. Michael Vernon, Lake Charles, La., for plaintiff-appellee.

Before RUBIN, JOHNSON and WIL-LIAMS Circuit Judges.

JOHNSON, *Circuit Judge:*

Plaintiff, Joseph W. Musial, brought this action pursuant to section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) seeking redress for injuries sustained while boarding the M/V PEGGY C, injuries that ultimately led to the amputation of his lower right leg. The case was tried without a jury and the trial court, finding Musial totally and permanently disabled, rendered judgment in favor of Musial for $460,616.33. This Court affirms.

On October 2, 1976, Joseph W. Musial, a Viet Nam veteran,[1] was employed as a night cook by ARA Food Services aboard an offshore oil platform owned by Forest Oil Company (Forest Oil).[2] Musial's daily shift began at 7:00 p.m. each evening and ended at 7:00 a.m. the following morning. On the morning of Musial's injury, he had just finished a twelve-hour shift. Rather than returning to his quarters, however, Musial volunteered to inventory a cold storage compartment aboard a tender vessel, the M/V PEGGY C, which is owned by A & A Boats, Inc. (A & A Boats) and was chartered by Forest Oil on this date.

Two methods of boarding the M/V PEGGY C were available to Musial. He could board the vessel by means of a personnel basket, which was lowered by a crane located on the rig some 100 feet above the vessel's deck, or by means of a swing rope located on the oil platform's landing. The swing rope procedure, an accepted mode of boarding the tender vessel, required Musial to swing about two or three feet out away from the oil platform's deck to an area above the tender vessel. Once

above the vessel's deck, Musial was forced to drop aboard the vessel—a distance of about four or five feet. Musial, a trained parachute jumper, safely swung to an area above the tender vessel, but landed upon a sharp steel recessed area of the vessel's deck. This protrusion of steel was obscured from Musial's vision while aboard the oil platform by the vessel's three to four foot gunwales. Although Musial requested permission to board the M/V PEGGY C before swinging over an area obscured from his vision, the deckhand signaling Musial to board did not warn him of the deck's steel protrusion.

According to two orthopedic surgeons who examined Musial, Dr. Daniel Kingsley and Dr. James Etheredge, the blow to Musial's heel crushed the calcenus (heel bone) and drove it up into the talus (the shaft of the ankle). Musial also suffered a blow to his mouth that required minor dental treatment. After the accident, he was immediately transferred to another platform and thereafter taken ashore by helicopter. Once ashore, Musial underwent therapy treatment designed to alleviate the pain attendant to his severe injuries. Nevertheless, the pain continued and Musial underwent a triple arthrodesis, a fusion procedure, which doctors hoped would reduce the pain. Unfortunately, the surgery resulted in increased pain and a second triple arthrodesis was recommended by a surgeon who expressly concluded that Musial's complaints of pain were sincere. The second surgery was performed but the pain remained and an infection developed in the injured area of the lower right leg.

The infection present in Musial's lower right leg prevented Dr. John Graham, a reconstructive surgeon in Shreveport, Louisiana, from attempting to rebuild Musial's injured leg. Instead, Musial was referred to an orthopedic surgeon who performed eleven surgical procedures in an attempt to

---

1. As the trial court noted, Musial served his country in the Army for 20 years. During his enlistment, Musial was awarded two silver stars, three bronze stars, three purple hearts, and various other decorations.

2. Forest Oil's platform was located approximately 85 miles off the coast of Louisiana and was being converted to a production platform at the time of Musial's injuries.

arrest the infection. The orthopedic surgeon, Dr. Etheredge, testified that each of the eleven surgical procedures was quite painful and that Musial agreed to forego the normal dosage of pain medication in an attempt to avoid potential addiction. Ultimately, a twelfth surgical procedure was performed in which Musial's right leg was amputated below the knee—more than three years after the original injury. Since the amputation, Musial has suffered "phantom pain" of his lower right leg and suffers continuing back pain resultant from the awkward manner in which he is required to walk with his prosthesis. Record, vol. II at 78–86. Musial has not worked since the accident.

Musial instituted this action naming A & A Boats, owner of the M/V PEGGY C, and Forest Oil, owner of the oil platform and charterer of the tender vessel, as defendants. Additionally, the defendants' respective insurers, Blue Ridge Insurance Company (Blue Ridge) and Aetna Casualty (Aetna), were joined as defendants. Musial based his action upon section 905(b) of the LHWCA alleging that the defendants were negligent in the following three respects: (1) failure to recognize that the metal protrusions on the vessel's deck presented a hazard to those boarding the vessel; (2) failure to warn persons boarding the vessel of the hazard; and (3) failure to remedy the hazardous condition. The case was tried to the court and the trial court concluded that A & A Boats was negligent stating: "The vessel in this case was negligent in mooring to the landing platform so that any person desiring to use the swingrope to come aboard was required to swing over the gunwale and drop to the deck below onto or near the recessed area in the deck." Finding this negligence the proximate cause of Musial's injuries, the trial court awarded Musial damages of $460,616.33 with legal interest from the date of entry of judgment until paid. Additionally, Forest Oil, as bareboat charterer, was held by the trial court to fall within the definition of "ves-

sel" as used in 33 U.S.C. § 905(b) and, consequently, was found liable to Musial. However, the trial court concluded that A & A Boats owed indemnity to Forest Oil under a contract entered into between A & A Boats and Forest Oil. Thus, the ultimate liability was found to lie against A & A Boats and its insurer, Blue Ridge.[3]

A & A Boats and Blue Ridge appeal to this Court alleging that the trial court erred in holding the vessel owner and charterer negligent, in failing to find the plaintiff contributorily negligent, and in finding the plaintiff totally and permanently disabled. Additionally, Musial cross-appeals contending that the district court erred by not awarding prejudgment interest on the award.

Appellants maintain that the trial court erred in holding the vessel owner and charterer negligent. Relying upon *Scindia Steam Navigation, Ltd. v. Lauro De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) and *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110 (5th Cir.1981), the appellants argue that Musial should have recognized the hazardous nature of his manner of boarding the vessel and should have utilized the personnel basket. Consequently, appellants reason that Musial created the hazardous condition causing his injuries by not utilizing the personnel basket when presented with the danger of boarding the tender vessel by means of a swingrope.

At the outset, this Court notes that the appellants' reliance on *De Los Santos* and *Lemon* is misplaced. When faced with an argument similar to appellants' in *Lemon,* this Court, relying upon *De Los Santos,* wrote:

The Supreme Court clearly established that the ability of a longshoreman to recover cannot turn on who was in the best position to recognize and remedy a dangerous condition when that condition was created by a vessel owner who knew or should have known of its existence prior to the stevedore's operations.

---

**3.** Neither A & A Boats nor its insurer has attacked the trial court's interpretation of the indemnification contract.

*Lemon,* 656 F.2d at 116. Clearly, this Court's discussion of *De Los Santos* runs contra to appellants' argument. *See also Hill v. Texaco, Inc.,* 674 F.2d 447, 452 n. 5 (5th Cir.1982).[4] Furthermore, appellants' argument ignores the express findings of the district court demonstrating that the danger attendant to use of the swingrope was obscured from Musial's vision by the vessel's gunwales.

This Court also notes that appellants do not contend that the district court applied the wrong standard of care. Indeed, appellants cite the authority relied upon by the district court in its memorandum opinion as the proper standard to be applied in this case. In reality, appellants' argument is simply that the trial court should have made a different evaluation of the evidence. Precedent, however, speaks strongly against such an argument. For example, the Supreme Court made the following statement in *McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 7, 66 L.Ed. 20 (1954):

> In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*See also Mac Towing, Inc. v. American Commercial Lines,* 670 F.2d 543, 546 (5th Cir.1982); *T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338, 348–49 (5th Cir.1980); *Compania Anonina Venezolana De Naugacion v. A.J. Perez Export Co.,* 303 F.2d 692, 694 (5th Cir.1962); and *Myles v. Quinn Menhadler Fisheries, Inc.,* 302 F.2d 146, 148 (5th Cir.1962). Accordingly, this

Court must reject appellants' contention that the trial court erred by holding the vessel owner and charterer negligent since the district court's decision in this respect is not clearly erroneous.

■ Appellants further contend that the trial court erred by concluding that Musial was not contributorily negligent. Specifically, appellants argue that Musial was contributorily negligent in that he did not use the personnel basket rather than the swingrope. Additionally, appellants aver that Musial used the swingrope in a careless manner. Once again, it is noted that the appellants do not challenge the district court's selection of legal standards. To the contrary, appellants simply argue that the evidence should have led the trial court to a different conclusion.

In its well-reasoned opinion, the district court disposed of appellants' contributory negligence argument in this manner:

> The further contention that Musial was contributorily negligent in the manner in which he swung on the rope to board the [M/V] PEGGY C is also lacking in merit. We find no contributory negligence in this case.

This Court declines to disturb the district court's finding noting that Rule 52(a) of the Federal Rules of Civil Procedure requires this Court to give "due regard ... to the opportunity of the trial court to judge ... the credibility of the witnesses." Simply put, this Court is not, after reviewing the entire evidence, left with a definite and firm conviction that a mistake has been committed. *See McAllister,* 348 U.S. at 20, 75 S.Ct. at 7.

■ In their final attack upon the district court's fact findings, the appellants aver that the district court erred in concluding that Musial is totally and permanently disabled. Suffice it to say that the district court's finding of total and permanent disability is not clearly erroneous. A wealth of evidence was presented to the district court in support of its finding. This evi-

---

**4.** Additionally, it is noted that *De Los Santos* involved the relationship between stevedore and shipowner. However, in this case, no evi-

dence suggests that Musial was employed by a stevedore.

dence clearly demonstrated that Musial was a most cooperative patient who did everything requested of him by his doctors and therapists and diligently attempted to rehabilitate himself.[5] As the district court correctly concluded, the simple fact is that Musial's tragic accident—proximately caused by the vessel owner's and charterer's negligence—has left him totally and permanently disabled.

 This Court also rejects appellants attack upon the trial court's damage award. The trial court's award is not indicative of an abuse of discretion and is not excessive, *see Moser v. Texas Trailer Corp.,* 623 F.2d 1006, 1017, *modified on other grounds,* 630 F.2d 249 (5th Cir.1980); *Hawkes v. Ayers,* 537 F.2d 836, 837 (5th Cir.1976); and *McKinzie v. Fleming,* 588 F.2d 165 (5th Cir.1979), but rather, the trial court's decision reflects reasoned and considered judgment.

 Musial contends by way of cross-appeal that the district court erred by granting legal interest from the date of entry of judgment rather than allowing pre-judgment interest. Generally in maritime law, pre-judgment interest should be awarded. *See Noritake Co. v. M/V HELENIC CHAMPION,* 627 F.2d 724, 728 (5th Cir.1980); *Masters v. Transworld Drilling Co.,* 688 F.2d 1013, 1014 (5th Cir.1982). However, this general rule is not applicable in this case. Musial's complaint and award were based upon the LHWCA, made applicable to platform workers by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(c). Since Musial is not a seaman, the "[LHWCA] is the exclusive remedy under the [OCSLA]." *See Stansbury v. Seakorski Aircraft,* 681 F.2d 948, 951 (5th Cir.1982). An award of interest in a suit brought under OCSLA is governed by federal law. *See Berry v. Sladco, Inc.,* 495 F.2d 523, 528 (5th Cir.1974). Hence, pursuant to 28 U.S.C. § 1961 "such interest shall be calculated from the date of entry of the

judgment, at the rate allowed by state law." *Aymond v. Texaco, Inc.,* 554 F.2d 206, 211 (5th Cir.1977). The trial court's award of interest is, therefore, affirmed.

Finding no error in the district court's judgment, this Court affirms the district court in all respects.

AFFIRMED.

---

5. The rehabilitation specialist assigned to him, Judy Brister, testified that Musial was positively motivated to work, was cooperative, and did everything that was requested of him. One of Musial's doctors, Dr. Lee Etheredge, testified that Musial was an "extremely cooperative" patient.