Richard WOODS, Plaintiff,

v.

PARTENREEDEREI MS. YANKEE CLIPPER, Defendants.

Civ. A. No. 85–3652–C.

United States District Court, D. Massachusetts.

Dec. 18, 1987.

Charles A. Clifford, Charlestown, Mass., for plaintiff.

Thomas Walsh, James Ring, Bingham Dana Gould, Boston, Mass., Robert E. McDonnell, for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a civil action brought to recover damages for injuries sustained by the plaintiff while working aboard the defendant vessel. Jurisdiction is based on admiralty jurisdiction. 28 U.S.C. § 1333. The matter is now before the court on the defendant's motion for summary judgment.

The plaintiff is a longshoreman who was employed by the stevedore, I.T.O. Corp., to help unload a cargo of containers from the defendant's ship, the MS Yankee Clipper, in Boston Harbor. The vessel began its journey at Halifax, Nova Scotia. Before reaching Boston, it stopped at Providence, Rhode Island, where it unloaded some of its containers.

On reaching Boston, the vessel docked at Castle Island terminal, where its containers were to be unloaded. The containers were stowed two layers deep on the top deck of the ship. Three more layers of containers were stowed in the hold of the ship below the hatch cover. The hatch covers themselves are segmented and are hydraulically operated. The containers were unloaded by using a stationary shore crane. Because the crane was stationary, the ship itself had to be moved to unload all the

containers. The ship's crew was responsible for opening the hatch covers and moving the ship, while the stevedore directed all other aspects of the unloading operation.

On the morning of the accident, the two levels of containers above deck had been unloaded, and the hatch covers had been opened. The plaintiff was on the containers in the hold, giving directions to the crane operator. While walking on the top of one of the containers, the plaintiff slipped and fell on an unidentified substance covering the top of the container.[1]

The plaintiff brought this suit, claiming that the defendant was negligent in failing to provide a safe workplace. The defendant now argues that the shipowner did not violate any duty owed to the plaintiff, and that the plaintiff has failed to meet his burden of going forward on the issue of the defendant's negligence.

■■■ The duty owed by a vessel to longshoremen is determined by the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. Prior to 1972, a vessel owed the stevedore and his longshoremen a duty to provide a safe and seaworthy vessel. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Proof of unseaworthiness did not require that the shipowner be negligent. An injured longshoreman could recover from the shipowner by showing only that an unsafe, injury-causing condition existed on the ship. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 164, 101 S.Ct. 1614, 1620, 68 L.Ed.2d 1 (1981). If the condition was due to the actions of the stevedore, the longshoreman could still recover from the shipowner, who could in turn seek recovery from the stevedore for breach of warranty to handle cargo in a safe manner. *Id.* at 165, 101 S.Ct. at 1621.

In 1972, though, Congress amended the LHWCA to alter this liability scheme. While increasing the ability of the injured longshoreman to recover from the steve-dore, Congress eliminated the longshoreman's right to recover for unseaworthiness. 33 U.S.C. § 905(b). Under these amendments, a shipowner could be held liable for his own negligence, but not the negligence of the stevedore. 33 U.S.C. § 905(b).

The leading case on the duty currently owed to a longshoreman by a shipowner is *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In this case, the Supreme Court noted that the vessel owes the longshoreman a duty to exercise due care "under the circumstances." *Id.* at 166, 101 S.Ct. at 1622. *See also Raymond v. I/S Caribia*, 626 F.2d 203, 206 (1st Cir.1980), *cert. denied* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981). This duty generally requires the shipowner to have the ship and its equipment in such a condition that an expert and experienced stevedore will be able to carry on cargo operations safely. *Scindia Steam Navigation Co.*, 451 U.S. at 167, 101 S.Ct. at 1622.

In this case, the plaintiff essentially argues that the defendant breached its duty of care in one of two ways. First, the plaintiff contends that the defendant knew of the slippery substance on the container, and therefore, the defendant should have either warned the plaintiff of the hazard or remedied the hazard.

If the defendant did know of the slippery condition, a jury could reasonably find that the defendant breached its duty of care by failing to warn or to clean the container. *See Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 175–76, 101 S.Ct. 1614, 1626–27 (if the shipowner knew that a cargo winch was defective, and that the stevedore was continuing to use it, and the winch presented an unreasonable risk of harm, then the shipowner had a duty to repair the winch). There is however, absolutely no evidence indicating that the ship's crew was aware of the slippery substance. The facts indicate just the opposite. The container on which the plaintiff slipped was

---

1. There is some evidence suggesting that this substance was an oily substance such as grease or hydraulic fluid. *See infra* note 2.

in the hold, covered by the hatch cover and two tiers of containers. The plaintiff himself noted that, even up close, the substance looked like "plain old dirt." There is no indication that the crew even had an opportunity to notice the condition of the containers, and no report of any hazardous condition was ever made to the ship's crew. The plaintiff has failed to provide evidence showing there is a factual dispute on this issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). A jury could therefore not reasonably find that the defendant had actual knowledge of the hazard that caused the plaintiff's injury. The remaining question, then, is whether the defendant breached its duty by failing to discover the hazard.

A shipowner certainly has a duty to take reasonable precautions to make sure the ship and its equipment are free from any unreasonable risks of harm. *Scindia Steam Navigation Co.*, 451 U.S. at 167, 101 S.Ct. at 1622; *Raymond v. I/S Caribia*, 626 F.2d at 206. This duty to inspect, however, does not generally extend to the cargo. In *Raymond v. I/S Caribia*, 626 F.2d 203 (1st Cir.1980), a longshoreman suffered a heart attack after attempting to lift a carton of frozen fish that was frozen to another carton. In finding that the ship could not be held liable, the court noted, "In the normal case, it is a condition of the ship, not the cargo, for which a vessel may be held responsible." *Id.* at 206. It is the stevedore, not the shipowner, who has the expertise in handling cargo. *Raymond*, 626 F.2d at 206. It is the stevedore, not the shipowner, who is in the best position to avoid accidents caused by hazards in the cargo area. *Scindia Steam Navigation Co.*, 451 U.S. at 171, 101 S.Ct. at 1624. Accordingly, the shipowner's duty of care does not generally require it to inspect the cargo, since it is entitled to rely on the expertise of the stevedore to ensure that the cargo does not pose any unreasonable risk to the longshoremen. Id. at 172, 101 S.Ct. at 1624. *See also, Robertson v. Tokai Shosen, K.K.*, 655 F.Supp. 152 (E.D.Pa. 1987) (shipowner not liable for injury caused by improperly stowed cargo).

The plaintiff also argues, though, that the defendant's duty required it to warn of, or remedy, the hazard since the defendant actively engaged in the cargo operations. It is true that the defendant may be liable if it actively involved itself in cargo operations and negligently injures a longshoremen, or if it fails to exercise due care to avoid exposing the longshoremen to hazards they may encounter in areas under the active control of the defendant during the cargo operation. *Scindia Steam Navigation Co.*, 451 U.S. at 167, 101 S.Ct. at 1622. Under the first theory, a shipowner may be subject to liability if it performs an act related to the cargo operation, which act creates an unreasonable risk of harm to the longshoremen. It is not enough that the ship's crew participated in the cargo operation. The plaintiff must also show that the activities of the crew also created the hazard which injured the plaintiff. This causal link between the ship's acts and the injury is required in order to carry out Congress' intent that a shipowner be liable only for its own negligence. *See Scindia Steam Navigation Co.*, 451 U.S. at 166 n. 13, 101 S.Ct. at 1621 n. 13.

Under the second theory, the shipowner may be subject to liability if it retains active control of an area, and fails to exercise due care to insure that the area poses no unreasonable risks of harm to the longshoremen. Where the shipowner retains control of an area during the cargo operation, he is not entitled to rely on the stevedore to ensure that the area is safe, as he may do when the area is under control of the stevedore. Before a shipowner is subject to liability under this "active control" theory, however, the plaintiff must show that the area is which he was injured was under the active control of the defendant.

In this case, neither of these theories is applicable. The defendant's activities during the cargo operations consisted of moving the ship from time to time, and of opening the hatch cover. Neither of these actions were related to the condition which caused plaintiff's injury. Nor did the defendant have active control of the area in which the plaintiff was injured. The plain-

tiff was injured in the cargo hold, which had been turned over to the stevedore for unloading. The defendant, therefore, could not be found negligent based on its activities during the cargo operation.

Finally, the plaintiff attempts to overcome the general rule that the shipowner is not responsible for hazards in the cargo area by arguing that a jury could find that the substance on the container was hydraulic fluid that leaked from the hydraulic hatch cover. The plaintiff seems to imply that since the defendant may have caused the hazard, the shipowner breached its duty by failing to either warn the longshoremen or remedy the danger. In *Scindia*, the Supreme Court certainly recognized that the shipowner's right to rely on the stevedore to protect longshoremen is not absolute. The Court noted that, when a shipowner knows or should know of a hazard in the cargo operation, and also knows that the stevedore is aware of the hazard but is not taking steps to protect the longshoremen, the shipowner has a duty to intervene. *Scindia Steam Navigation Co.*, 451 U.S. at 173–74, 101 S.Ct. at 1625.

While *Scindia* involved a danger posed by the ship's equipment, a similar duty may exist when the danger is posed by the cargo itself. In *Lemon v. Bank Lines, Ltd.*, 656 F.2d 110 (5th Cir.1981), the Court of Appeals upheld the shipowner's liability for a longshoreman's injuries sustained when a pile of negligently loaded cargo collapsed. The Court noted that, when the ship negligently created a dangerous condition and knew or should have known of its existence, it had a duty to at least warn the stevedore of the danger. *Id.* at 116. Thus, while a shipowner is generally entitled to rely on the stevedore to provide a safe work area, the shipowner's duty of care requires that it warn of, or remedy, dangers posed by the cargo that were caused by the ship's negligence and that were known, or should have been known, to the ship's crew. *See also Harris v. Flota Mer-*

*cante Grancolombiana, S.A.,* 730 F.2d 296, 299 (5th Cir.1984) (the shipowner's liability for damages arising from negligent stowage of cargo is limited to situations where the shipowner knew or should have known of the dangerous condition).

Applying these principles to this case, a jury could find that the defendant breached its duty of care by failing to warn the stevedore of the slippery containers if: (1) the substance leaked onto the containers from the ship's hatch covers, (2) the leak resulted from the defendant's negligence in maintaining or inspecting the hatch covers, and (3) the defendant knew or should have known that the fluid was leaking onto the containers. Even assuming a jury could find that the fluid was indeed hydraulic fluid from the ship's hatches, the plaintiff has not provided any evidence whatsoever that would allow a jury to infer the defendant was negligent in maintaining the hatch cover, or to infer the defendant knew or should have known the hatch cover was leaking.[2] Absent this evidence, the plaintiff has failed to carry his burden to show a reasonable jury could find that the defendant breached its duty of care owed to the plaintiff.

In summary, the defendant owed the plaintiff a duty of care under the circumstances. Based on the facts as viewed in a light most favorable to the plaintiff, however, a reasonable jury could not find that the defendant breached this duty. The defendant is therefore entitled to judgment as a matter of law, and the defendant's motion for summary judgment should be granted.

Order accordingly.

---

**2.** Even the inference regarding the identity of the fluid is questionable in light of the scant evidence provided by the plaintiff. The plaintiff's sole evidence consists of conjecture by several longshoremen that the substance might have been hydraulic fluid, and of the circumstantial evidence that the container was on the first level, immediately beneath the hatch cover.