|1ARMSTRONG, Judge.
Plaintiff Jerry Young, a longshoreman, filed this suit pursuant to § 905(b), of the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et seq., against Armadores de Cabotaje, S.A. (“ARCASA”) and Empresa Nacional Siderugica. S.A. (“ENSIDESA”). Defendants ARCASA and ENSIDESA appealed from a judgment in favor of plaintiff and on March 31, 1993 this court reversed the judgment of the trial court in part, amended it, and affirmed the judgment as amended.[1] On June 20, 1994 the United States Supreme Court granted ARCASA’s application for writ of certiorari, vacated this court’s decision, and remanded the case “for further consideration in light of Howlett v. Birkdale Shipping Co., S.A, 512 *1267 U.S. -, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994).” [2]
|2ENSIDESA manufactures steel beams in Spain. It chartered the M/V LORENA, owned by ARCASA, to ship a cargo of steel beams to the port of New Orleans. EN-SIDESA loaded and stowed the cargo of beams in Spain. Cooper Stevedoring Company, Inc. (“Cooper”) contracted with EN-SIDESA to unload the beams in New Orleans. Plaintiff, an employee of Cooper, was injured in the cargo hold of the MN LORENA while unloading the steel beams. Plaintiff claimed the cargo of steel beams had been improperly stowed, making it dangerous to unload and resulting in his injury during the unloading process.[3]
In our original opinion we stated the law as set forth by the U.S. Supreme Court and interpreted by lower federal courts. We stated:
In the seminal ease of Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the U.S. Supreme Court defined the duties owed by a vessel owner to the stevedore and his longshoremen. These duties were succinctly stated by the 5th U.S. Circuit Court of Appeal in Hill v. Texaco, 674 F.2d 447, 450-51 (5th Cir. 1982):
First, before the stevedore begins his work, a shipowner must exei’cise care to make safe the portions of the ship that it turns over to the stevedore. In discharging this duty the ship may rely on the stevedore’s performing its task with reasonable care. The shipowner must also warn the stevedore of hidden unsafe conditions on the ship of which the ship is, or should be, aware.
Second, once the stevedore begins its operations, the shipowner has no general duty to supervise work or to inspect the area assigned to the stevedore, unless custom, contract, or law imposes such a duty on the shipowner. The shipowner need not monitor the stevedore’s operations; rather, the shipowner is entitled to rely on the stevedore’s expertise and reasonableness.
Third, the Supreme Court made an exception to the general absence of a duty of the shipowner to protect employees of the stevedore during cargo operations. The duty arises when two conditions are fulfilled. If the shipowner becomes aware during the stevedore’s work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoremen against the danger, then the shipowner acquires a duty to intervene and protect the longshoremen. The shipowner can have knowledge of a defect if the defect develops during the stevedore’s operations and the shipowner had actual knowledge, or if the defect exists at the |3outset and the ship ‘must be deemed’ to have knowledge of it.
(footnotes omitted) (emphasis ours).
In Lemon v. Bank Lines, Ltd., 656 F.2d 110 (5th Cir.1981), the U.S. Fifth Circuit described the judicial balancing of supervisory duties between the vessel owner and the stevedore:
The shipowner is therefore responsible for eliminating dangerous conditions which exist at the outset of the stevedor-ing operations, but has ‘no duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations.’ It is the stevedore who must see to the safety of cargo operations, (citations omitted).
Id. at 115.
In Lemon, the court held that a vessel owner could be liable under Scindia if it knew or should have known of an improper loading technique and failed to take actions to either correct the stowage or warn the offloading stevedore’s employees of the dangerous condition contained in the stow. Lemon, 656 F.2d, at 116. In Harris v. Flota Mercante Grancolumbiana, S.A., *1268 730 F.2d 296, 299 (5th Cir.1984), the same court, citing Lemon, again held that a vessel owner could be held liable for negligently stowed cargo which caused an offloading longshoreman to be injured. See in accord, Woods v. Sammisa Co., Ltd., [873 F.2d 842 (5th Cir.1989) ] supra.
As in Lemon and Harris, we are 'concerned in the instant case not with conditions which develop after offloading steve-doring operations begin, but with a condition present when the vessel is turned over to the stevedore. The alleged negligence “occurred in the method and manner of stowing cargo that was delivered to the longshoremen and stevedore.” Harris, supra [730 F.2d] at 299. Therefore, although the alleged dangerous condition caused by the crushed dunnage on the M/V LORENA became more apparent as the longshoremen got deeper into the stow, the second and third Scindia duties are not relevant to our analysis. The primary burden contemplated by Scindia was the duty of the vessel owner to turn over to the offloading stevedore a vessel which could be offloaded with reasonable safety. This is the focus of our analysis.
617 So.2d at 526, 527.
We found both ARCASA, as the shipowner, and ENSIDESA, as time-chartered and loading stevedore, liable for breaching the first Scindia duty, the duty to turn over (the “turnover duty”) the ship in a condition such that an expert and experienced stevedore could, with the exercise of ordinary care, safely unload the cargo. We rejected any notion that either ARCASA or |4ENSIDESA breached a duty to warn of any hidden unsafe conditions, finding that the danger presented by the stow was open and obvious. We found that the evidence furnished a basis for a conclusion that the manner in which the beams had been stowed resulted in a condition presenting an unreasonable risk of harm to an expert and experienced unloading stevedore exercising ordinary care or reasonable safety. The evidence supported the finding that ARCASA had participated in preparing the stowage plans for the improperly stowed steel beams.
In Howlett v. Birkdale Shipping Co., S.A., 512 U.S. -, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994), the U.S. Supreme Court granted certiorari in a case from the U.S. Court of Appeal for the Third Circuit “to resolve a conflict among the circuits regarding the scope of the shipowners’ duty to warn of latent hazards in the cargo stow.” Id. at -, 114 S.Ct. at 2062. While the Court’s decision did not specifically address the turnover duty itself, only the duty to warn, it characterized the duty to warn as a “corollary” of the turnover duty. Id. at-, 114 S.Ct. at 2063. The decision made clear, as we stated in our original decision, that the duty to warn does not apply to conditions presenting an open and obvious danger, only to latent hazards. Id. at-, 114 S.Ct. at 2064.
In Howlett the Court rejected the suggestion that a shipowner must make reasonable inspections during stevedoring operations (loading) to ensure a proper stow and to detect any hazards or defects before they become hidden, reasoning that such a duty “would require vessels to inject themselves into matters beyond their ordinary province,” i.e., stevedoring operations. 512 U.S. at -, 114 S.Ct. at 2066. In reaching this conclusion the Court fully considered the role of the vessel and its crew in “preparing a stowage plan, which governs where each cargo will be stowed on the ship.” Id. The Court also rejected the argument that the vessel need make reasonable inspections after the completion of loading stevedoring operations to discover hazards in the stow, |5stating that any such hazards would normally be discovered by a reasonably competent unloading stevedore. 512 U.S. at-, -, 114 S.Ct. at 2066, 2067.
The Howlett Court distinguished the degree of operational control exercised over the cargo stow with that exercised over the ship itself, its gear, equipment and tools. In Howlett the U.S. Supreme Court evidences a clear intent to narrowly limit the liability of a vessel owner under 33 U.S.C. § 905(b) for injuries incurred as a result of a dangerous cargo stow. This court’s affirmation of the finding of liability on the part of ARCASA was primarily based on its participation in *1269 preparing the stowage plan. The 15% of the total fault attributed to ARCASA by the jury, which was affirmed by this court, reflects the minimal role of the vessel owner.
Considering the clear thrust of Hoiolett, we conclude that the minimal role played by ARCASA in participating in the preparation of the stowage plan which detailed the placement and levelling of the cargo — not whether the beams were to be stowed on the “H” (the cause of the dangerous condition in the stow) — is not sufficient to support a finding of liability as to ARCASA. ENSIDESA, both the time-charterer of the vessel and the loading stevedore, is solely and directly responsible for the dangerous condition presented by the cargo which it alone stowed on the M/V LORENA. The judgment of the trial court will be amended accordingly.
For the foregoing reasons, together those set forth in our original decision not inconsistent with the foregoing, we reverse that portion of the trial court judgment finding defendant Armadores de Cabotaje, S.A. 15% at fault and render judgment in favor of defendant Armadores de Cabotaje, S.A. and against plaintiff Jerry Young, dismissing with prejudice all of his claims against that company as well as any cross claims against it. We further amend the judgment of the trial court to render judgment in favor of plaintiff Jerry Young and against defendant Empresa Nacional Siderugica, S.A. for all damages to plaintiff Jerry Young. We further amend the judgment of the trial |6court to award damages to plaintiff Jerry Young, excluding past medical expenses,[4] as follows:
Future medical expenses: $ 274,949.00
Past physical and mental pain and suffering and disability from date of accident to date of trial: $ 250,000.00
Future physical and mental pain and suffering and disability: $ 250,000.00
Past loss of earnings or earning capacity from date of accident to trial: $ 141,365.00
Future loss of earnings or earning capacity: $ 189,732.00
TOTAL $1,106,046.00
We affirm the judgment as amended and in all other respects.

REVERSED IN PART; AMENDED; AFFIRMED AS AMENDED.

. Young v. Armadores Cabotaje, S.A., 617 So.2d 517 (La.App. 4th Cir. 1993), writs denied, 625 So.2d 170, 171 (La.1993), cert. granted, vacated, remanded, Armadores de Cabotaje, S.A. v. Young, 512 U.S.-, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994).

. Armadores de Cabotaje, S.A. v. Young, 512 U.S. -, 114 S.Ct. 2701, 129 L.Ed.2d 830 (1994).

. A full recitation of the facts is contained in our original opinion, 617 So.2d at 517.

. The issue of past medical expenses was not submitted to the jury and is not at issue on appeal.