**Herbert J. HARRIS, Sr.,**
**Plaintiff-Appellant,**

v.

**FLOTA MERCANTE GRANCOLOMBIANA, S.A., et al., Defendants-Appellees.**

**No. 83–3382**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 23, 1984.

Rehearing Denied May 21, 1984.

Abadie, Harang & Colvin, Charles B. Colvin, New Orleans, La., for plaintiff-appellant.

Terriberry, Carroll, Yancey & Farrell, Douglas P. Matthews, John A. Bolles, New Orleans, La., for defendants-appellees.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Herbert Harris, a longshoreman, appeals from a directed verdict in favor of defendant Flota Mercante Grancolombiana, S.A., owner of the M/V CUIDAD DE GUAYAQUIL. The trial court found Grancolombiana relieved from liability because cargo improperly loaded on the CUIDAD DE GUAYAQUIL caused Harris's injury and Harris knew of this obvious danger. We disagree with the district court's reading of 33 U.S.C. § 905(b) and reverse and remand for a new trial.

I

We view the facts in the light most favorable to Harris, against whom a directed verdict was granted. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc).

Harris and nineteen other longshoremen employed by the New Orleans Stevedoring Company began unloading one hundred and fifty pound sacks of coffee from the hold of the CUIDAD DE GUAYAQUIL. Some of the tiers were as high as sixteen

feet. The sacks were not tied, a procedure in which the sacks are stacked to provide greater stability, nor were they supported by dunnage, wood platforms placed every five sacks high to provide greater support. Instead, the sacks appeared to have been jammed or thrown into the hold. Four longshoremen, including Harris and his foreman, Charles Impastato, testified that the stow of the stacks, considering their height and lack of tying and dunnage, was dangerous. The stacks also appeared to be leaning toward the middle of the ship, where the longshoremen were working, instead of toward the hull. Impastato approached the ship's mate and complained that the coffee was "very very poorly stored" but the mate only nodded his head. Impastato also complained to a superintendent of the stevedoring company. The longshoremen testified that there was nothing they could do about the dangerous condition of the stow but try to unload the .coffee. Impastato testified that it is the custom in the industry for the ship to decide whether dunnage is to be used, that dunnage involved an extra expense for the ship and that Grancolombiana never used dunnage.

Later in that shift, Harris was unloading coffee from a tier about six to seven feet high when several tiers of sacks, fourteen to sixteen feet high, fell and injured him.

The trial judge found that because the danger caused by improperly stowed cargo was obvious, and the stevedore and longshoremen knew of the danger, the ship was relieved of any liability under 33 U.S.C. § 905(b) as interpreted by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

## II

Prior to 1972, a longshoreman could recover from the shipowner for injuries caused by an unseaworthy vessel. The longshoreman was not required to prove fault and could recover from the shipowner even if the unseaworthy condition was created by the stevedore. *See generally Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1034 (5th Cir.1983). In 1972, amendments to the Longshoreman's and Harborworkers' Compensation Act substituted negligence for unseaworthiness as the standard of liability for the shipowner. 33 U.S.C. § 905(b).[1] A longshoreman's compensation payments from stevedores for injuries incurred while working were substantially increased, and while his right to recover from the shipowner for unseaworthiness was abolished, he was given a statutory right to recover for the shipowner's negligence under § 905(b). Completing the changes, the stevedore's obligation to indemnify the shipowner for longshoremen's suits against the shipowner was abolished.

Judicial development of the congressional changes produced differences among the circuits over the nature of the vessel's duty to stevedores under the new negligence standard. In *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. at 165, 101 S.Ct. at 1621, the Supreme Court attempted to settle these differences.

*Scindia* was primarily concerned with a dangerous condition that *develops* within the confines of cargo operations after the stevedore takes control. The Court noted that a stevedore then becomes primarily responsible for the safety of the longshoreman and "the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dan-

---

1. 33 U.S.C. § 905(b) provides in relevant part:
   In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of unseaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

gerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 172, 101 S.Ct. at 1624. The Court reasoned that liability would fall on the shipowner only if he knew of the later-developed danger and also knew that the stevedore was not taking steps to cure it. *Id.* at 178, 101 S.Ct. at 1627.

■ *Scindia* also described the more general aspects of a shipowner's duty to longshoremen. Thus, the shipowner must exercise care to deliver to the stevedore a safe ship with respect to "the ship's gear, equipment, tools, and work space to be used in the stevedoring operations." *Id.* at 167, 101 S.Ct. at 1622. Further, the shipowner has a duty to warn the stevedore and longshoremen of hidden defects that would be known to the shipowner in the exercise of reasonable care. *Id.* at 167, 101 S.Ct. at 1622. *See also Helaire v. Mobil Oil Co.,* 709 F.2d at 1136.

### III

The district court here was apparently of the view that the *Scindia* analysis would not encompass a danger presented by the manner of stowing the cargo. In *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110 (5th Cir. 1981), we found that a shipowner could be liable for negligently stowed cargo which caused injury. The jury in *Lemon* found that the shipowner breached a duty to exercise reasonable care in failing to provide a reasonably safe place to work. *Id.* at 115. In *Lemon,* as here, the negligence occurred in the method and manner of stowing cargo that was delivered to the longshoremen and stevedore. We were not concerned in *Lemon,* nor are we concerned here, with dangerous conditions that develop only after control of the ship has been given to the stevedore. In *Lemon* the chief mate of the ship had actual knowledge of the improper loading techniques and the shipowner nev-

er corrected the improper stow or warned the longshoremen of the danger. *Id.* at 116. We concluded that "the shipowner is therefore responsible for eliminating dangerous conditions which exist at the outset of the stevedoring operations." *Id.* at 115.

■ The shipowner's liability for damages arising from a dangerous stow is limited to situations where the shipowner knew or should have known of the dangerous condition. *Lemon v. Bank Lines, Ltd.,* 656 F.2d at 116.[2] There was evidence here that the danger was obvious and that Grancolombiana directly contributed to it by not ordering dunnage. There was also evidence that before Harris was injured Grancolombiana knew that the cargo was improperly stowed and that the longshoremen were continuing to unload the cargo despite the inherent danger.

■ We also noted in *Lemon v. Bank Lines, Ltd.,* 656 F.2d at 115, that the shipowner did not inform the stevedore or the longshoremen of the dangerous condition. While it does not appear that Grancolombiana informed either the stevedore or longshoremen of the dangerous stow, the district court relieved Grancolombiana from liability because the danger was "obvious" and all of the longshoremen, including Harris, were aware of it. But that the danger was "obvious" is not necessarily a complete defense to a longshoreman's suit, "because when faced with an openly dangerous shipboard condition, the longshoremen's 'only alternatives would be to leave his job or face trouble for delaying the work.'" *Stass v. American Commercial Lines, Inc.,* 720 F.2d 879, 882 (5th Cir.1983), *quoting Napoli v. Helenic Lines Ltd.,* 536 F.2d 505, 509 (2d Cir.1976); *accord, Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. at 176 n. 22, 101 S.Ct. at 1626 n. 22. *See also Hill v. Texaco, Inc.,* 674 F.2d 447, 452 n. 5 (5th Cir.1982); *Pluyer v.*

---

2. If an independent contractor performs the loading operations, and the shipowner reasonably has no knowledge of a dangerous condition thereby created, the owner may escape liability. *See Moser v. Texas Trailer Corp.,* 694 F.2d 96, 98 (5th Cir.1982); *Mallard v. Aluminium Co. of*

*Canada, Ltd.,* 634 F.2d 236, 243, 244 n. 9 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). Here there was no evidence that Grancolombiana used an independent contractor to load the coffee in South America.

*Mitsui O.S.K. Lines, Ltd.,* 664 F.2d 1243, 1246 (5th Cir.1982). Thus, " 'a longshoremen's own knowledge of shipboard hazard will not negate a shipowner's duty of care which would otherwise exist.' " *Stass v. American Commercial Lines, Inc.,* 720 F.2d at 882, *quoting* Comment, 56 Tul.L. Rev. 1421, 1432 (1982). In sum, we disagree with the district court's determination that Grancolombiana was relieved as a matter of law of all responsibility because the danger was obvious.

The evidence presented by Harris would have been sufficient to support jury findings that Grancolombiana was negligent in providing an unreasonably dangerous place to work and that Harris's injuries were caused by this dangerous condition. The case should not have been taken from the jury and the judgment must be REVERSED and the case REMANDED for a new trial.