**Arthurene ROBY, et al**

**v.**

**HYUNDAI MERCHANT MARINE, et al.**

**Civ. A. Nos. 88–821 to 88–823.**

United States District Court,
E.D. Louisiana.

Nov. 22, 1988.

Wiedemann & Fransen, Roland L. Belsome, New Orleans, La., Carimi Law Firm, Darryl J. Carimi, John M. Ribarits, Trial

Atty., James C. Klick, Trial Atty., Gretna, La., Cleveland, Barrios, Kingsdorf & Casteix, Dawn Barrios, New Orleans, La., for plaintiffs.

R.A. Osborn, Jr., Molaison, Osborn & Starr, Gretna, La., for I.T.O. Corp., Intervenor.

Gelpi, Sullivan, Carroll & Labord, Gerard T. Gelpi, Trial Atty., Randall C. Coleman III, New Orleans, La., for Botelho Shipping Corp. and Asean Chartering Co. Ltd.

Terriberry, Carroll & Yancey, Gary A. Hemphill, Trial Atty., New Orleans, La., for Hyundai Merchant Marine.

### ORDER AND REASONS

FELDMAN, District Judge.

In this wrongful death case, the widow and children of Arthur Firmin, a longshoreman aboard the M/V SAN MATEO VICTORY, have filed suit against defendants Botelho Shipping Company, the bareboat charterer, and Hyundai Merchant Marine Company, Ltd., the time charterer, under Section 905(b) of the Longshore and Harborworkers' Compensation Act, 33 U.S.C. § 901 *et seq.*

The M/V SAN MATEO VICTORY had been loaded with a cargo of plywood at ports in Malaysia, Indonesia, and the Philippines for destination and offloading at various United States ports. Defendants had arranged with foreign stevedores to sling the cargo and load it onto the vessel for the voyage to the United States. The slinging operation involved placing two long wire rope slings on the underside of a cargo tier so that the cargo could be lifted by a gantry crane on the vessel.

The vessel arrived in New Orleans on November 4, 1985. Stevedores, including Mr. Firmin, began discharging the plywood cargo. The vessel's crane was used by maneuvering the crane hooks into the eyes of the sling and lifting the cargo from the vessel hold. Mr. Firmin was a "holdman". Before lifting one tier of cargo, Mr. Firmin noticed that one of the slings had become loose around the cargo. In an attempt to tighten the sling, Mr. Firmin placed the sling under the cargo so that the sling could be properly secured to the plywood. While the load was being lifted, the cargo slipped from the sling and fell onto Mr. Firmin killing him.

Plaintiffs have alleged that defendants' negligent failure to assure proper stowage in the slinging operation proximately caused Mr. Firmin's death. Defendants now move this Court for summary judgment. The summary judgment motion of Botelho Shipping Corporation is DENIED; the summary judgment motion of Hyundai Merchant Marine Company is GRANTED.

I. Vessel Owner's Duty of Care to Longshoremen: Botelho's Motion for Summary Judgment

In *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court, citing *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), defined the duties owed by a vessel owner to the stevedore and his longshoremen:

> [T]he vessel owes to the stevedore and his longshoremen employees the duty of exercising due care 'under the circumstances.' This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger

which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.... It is also accepted that the vessel may be liable *if it actively involves itself in the cargo operations and negligently injures a longshoreman* or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

451 U.S. at 166–67, 101 S.Ct. at 1621–22. (Emphasis added).

However, the Supreme Court also recognized that the vessel owner's liability was not unlimited, and that at some point the vessel owner was entitled to delegate supervisory duties to the stevedore. As the Court explained, "It would be inconsistent with the [Longshoremen's and Harbor Workers' Compensation] Act to hold ... that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process." *Id.* at 169, 101 S.Ct. at 1623.

Construing the well-informed decision in *Scindia*, the Fifth Circuit, in *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110, 115 (5th Cir.1981), described the judicial balancing of supervisory duties between the vessel owner and the stevedore:

> The shipowner is therefore responsible for eliminating dangerous conditions which exist at the outset of the stevedoring operations, but has 'no duty by way of supervision of inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations.' It is the stevedore who must see to the safety of cargo operations.

This division of supervisory duty between the vessel owner and the stevedore is at the heart of the controversy in this case. Thus, a closer look at *Lemon* is instructive in resolving the issue now before this Court.

In *Lemon,* plaintiff, a longshoreman, brought suit under Section 905(b) against the vessel owner. Plaintiff was hurt while unloading rolls of burlap and bales of jute from the vessel, because the rolls had been loaded in the hold so that gaps were created between the rolls and the skin of the ship. Plaintiff, noticing that one of the stacks of bales seemed unstable, and fearing that the bales might topple and injure someone, crawled over the top of the cargo to the skin of the ship where he intended to descend from the vessel's wooden dividers to a position behind the bales. As he was descending, one of the dividers broke, and plaintiff was injured as the bales of jute toppled on him.

At trial, the jury determined that defendant, owner of the vessel, breached a duty owed to longshoremen to exercise reasonable care in providing a reasonably safe work place by failing to warn the stevedore of the potentially dangerous condition in the hold. However, the district court granted a judgment notwithstanding the verdict, holding that under the Act, the shipowner is not liable to longshoremen employed by an independent stevedore for injuries which occurred when the stevedore had complete control of the unloading operation. *Id.* at 112. Significantly, this is the same argument that defendants here raise in support of their summary judgment motion.

The Fifth Circuit reversed the district court's JNOV[1] explaining:

> ... The Supreme Court clearly established that the ability of a longshoreman to recover cannot turn on who was in the best position to recognize and remedy a dangerous condition when that condition was created by a vessel owner who knew or should have known of its existence prior to the stevedore's operations. The

---

1. The Fifth Circuit noted in a footnote that the test for determining whether to grant a motion for judgment notwithstanding the verdict is the same as that applied to a motion for directed verdict—the court "must examine the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion." The same standard applies to a summary judgment motion.

Court specifically imposed a duty on the shipowner to at least warn the stevedore of any dangerous condition, existing at the outset of the stevedoring operations, of which the shipowner should have been aware through the exercise of reasonable care.

In this case, the jury found that the defendant shipowner was negligent in the method and manner of stowing the cargo and that the negligence proximately contributed to the plaintiff's injury. The evidence supporting their verdict included the fact that the chief mate had actual knowledge of the improper loading technique and failed to take actions to either correct the stowage or warn the plaintiff or his co-workers of the dangerous conditions contained within the stow. Considering the appropriate interpretation of section 905(b) provided by *De Los Santos,* and viewing the evidence in a light most favorable to the plaintiff, we conclude that the district court erred in granting a j.n.o.v. in the case at bar.

Like the plaintiff in *Lemon,* plaintiffs here contend that Firmin's death was proximately caused by defendants' negligence "in the method and manner of stowing the cargo...." *Id.* Also, like the plaintiff in *Lemon,* plaintiffs here have submitted the affidavit of the vessel's Chief Mate stating that he had actual knowledge of the improper loading technique and failed to act either to correct the stowage or to warn the plaintiff or his co-workers of the dangerous condition in the stow. While this Court does not now hold that Botelho Shipping's actions were the cause of Firmin's death, *Lemon* does prompt the Court to conclude that the issue of Botelho Shipping's duty toward Firmin, and disputed facts regarding a possible breach of that duty, have been sufficiently raised to render summary judgment in favor of Botelho inappropriate.

Defendants rely heavily on the Third Circuit decision in *Derr v. Kawasaki Kisen K.K.,* 835 F.2d 490 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988), for the proposition that a vessel owner has no duty to supervise cargo loading by the stevedores, and therefore, can not as a matter of law be liable for injuries arising out of defects in the cargo loading operation. However, *Derr* is not the law of this Circuit. In fact, *Derr* relies on a different line of authority from cases in the Fifth Circuit that have reached the opposite conclusion.

For example, in *Harris v. Flota Mercante Grancolombiana S.A.,* 730 F.2d 296 (5th Cir.1984), plaintiff brought suit against the shipowner for injuries sustained during cargo unloading, and the district court directed a verdict in favor of the shipowner based on the obviousness of the danger. The Court of Appeals reversed the district court. Judge Higginbotham specifically disagreed with the district court's holding that *Scindia* does not encompass dangers presented by the manner of stowing cargo.

Citing *Lemon,* the *Harris* court held that a shipowner could indeed be liable for negligently stowed cargo which caused a longshoreman's injury. 730 F.2d at 299. As the court explained:

> In *Lemon,* as here, the negligence occurred in the method and manner of stowing cargo that was delivered to the longshoremen and stevedore. We were not concerned in *Lemon,* nor are we concerned here, with dangerous conditions that develop only after control of the ship has been given to the stevedore. In *Lemon* the chief mate of the ship had actual knowledge of the improper loading techniques and the shipowner never corrected the improper stow or warned the longshoremen of the danger. We concluded that 'the shipowner is therefore responsible for eliminating dangerous conditions which exist at the outset of the stevedoring process.'

Thus, the case literature of the Fifth Circuit, unlike the Third Circuit, clearly instructs that a shipowner can be held liable for injuries resulting from the owner's failure to eliminate dangerous conditions in the cargo loading operation present at the

outset of the stevedoring process.[2]

Defendants again cite caselaw outside this circuit, *Bonds v. Mortensen and Lange*, 717 F.2d 123, 127–28 (4th Cir.1983), for the proposition that the vessel owner is not liable for injuries caused by dangers that were obvious to longshoremen and their stevedore employer. Defendants argue that because the condition of the cargo slings was obvious to Mr. Firmin, they are insulated from liability for Mr. Firmin's death, if the death was caused by that condition. However, Fifth Circuit law is, again, patently to the contrary.

In *Harris v. Flota Mercante Grancolombiana S.A.*, supra, the Fifth Circuit specifically rejected defendants' obvious danger argument. As Judge Higginbotham reasoned:

> ... the district court relieved Grancolombiana from liability because the danger was 'obvious' and all of the longshoremen, including Harris, were aware of it. But that the danger was 'obvious' is not necessarily a complete defense to a longshoreman's suit, 'because when faced with an openly dangerous shipboard condition, the longshoreman's only alternatives would be to leave his job or face trouble for delaying work.' Thus, 'a longshoreman's own knowledge of a shipboard hazard will not negate a shipowner's duty of care which would otherwise exist.' In sum, we disagree with the district court's determination that Grancolombiana was relieved as a matter of law of all responsibility because the danger was obvious.

The Fifth Circuit has clearly determined that a vessel owner may be liable for injuries to longshoremen caused by defects in the cargo loading process of which he was aware, and that the obviousness to the longshoreman of the danger does not relieve the owner of liability as a matter of law. Therefore, because plaintiffs here have presented sufficient evidence to show that defendant Botelho Shipping may have been aware of a dangerous condition in the cargo loading process that is claimed to have caused Mr. Firmin's death, this Court DENIES Botelho Shipping's motion for summary judgment.

## II. Duty Owed by a Time Charterer to Longshoremen: Hyundai Merchant Marine's Summary Judgment Motion

■ In assessing Hyundai Merchant Marine Company's motion for summary judgment, this Court must employ a different analysis from that discussed in connection with the motion of Botelho Shipping. As the Fifth Circuit noted in *Kerr–McGee Corp. v. Ma–Ju Marine Services, Inc.*, 830 F.2d 1332, 1340 n. 8 (5th Cir.1987), "*Scindia* ... does not set the duty of time-charterers. Though the Supreme Court used the word 'vessel' throughout its opinion, the context of the case, as well as the Court's alternate use of 'shipowner' suggest that the duties prescribed in *Scindia* apply only to true owners or other parties with similar dominion over the boat."

Traditionally in time-charter agreements, the charterer directs the vessel's commercial activities, but

> the owner's people continue to navigate and manage the vessel.... The time charter is used where the charterer's affairs make it desirable for him to have

---

**2.** Defendants attempt to distinguish this case from *Lemon* and *Harris* by suggesting that those cases did not involve situations covered specifically by the Safety and Health Regulations for Longshoring, 29 C.F.R. § 1918.1, which, they urge, "provides that the stevedore is responsible for insuring that loads are properly slung before being hoisted." However, this Court rejects the argument that Section 1918.1 diminishes the impact of *Lemon* and *Harris* on this case. The language in *Lemon* and *Harris* is sufficiently broad to suggest that even a vessel owner's constructive knowledge may suffice to render the owner liable for subsequent injuries proximately caused by cargo loading defects. *See, e.g., Lemon*, 656 F.2d at 116: "The Supreme Court clearly established that the ability of a longshoreman to recover cannot turn on who was in the best position to recognize and remedy a dangerous condition when that condition was created by a vessel owner who knew *or should have known* of its existence prior to the stevedore's operations." (Emphasis added). Thus, the Safety and Health Regulations must be read in light of this Circuit's interpretation of vessel owner liability for cargo loading defects present at the outset of stevedoring operations, and defendants' distinction is not dispositive.

tonnage under his control for a period of time, without undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership.

G. Gilmore & C. Black, *The Law of Admiralty* § 4–1, at 194.

The Fifth Circuit has held that a time-charterer generally assumes no liability for negligence of the vessel's crew or unseaworthiness of the vessel unless plaintiffs demonstrate that the charter parties intended otherwise. *Mallard v. Aluminum Co. of Canada, Inc.,* 634 F.2d 236, 242 n. 5 (5th Cir.1981), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). Thus, in analyzing Hyundai Merchant Marine Company's potential liability for plaintiffs' damages, this Court must look to the time charter to determine whether the parties intended to shift to Hyundai liability for vessel crew negligence and vessel unseaworthiness.

Clause 8 of the charter party between the defendants sets forth the responsibilities pertaining to cargo loading, stowing, and discharge. That clause provides:

> The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim, tally, secure and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

Plaintiffs and Botelho contend that this clause shifts to Hyundai responsibility for cargo operations and for injuries to longshoremen arising out of cargo operations when the negligence of the vessel has been established. To support their position, plaintiffs and Botelho rely on the Second Circuit decision in *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145 (2d Cir. 1976), and on the Ninth Circuit case, *Turner v. Japan Lines,* 651 F.2d 1300 (9th Cir. 1981). Both *Turner* and *Fernandez* involved the same charter language at issue in this case; in those cases, the courts held that the agreement made the time charter-

er "primarily liable for any injury to cargo or longshoremen which results from the improper performance of those operations." 651 F.2d at 1306.

However, the law of this Circuit differs from *Fernandez* and *Turner.* In reviewing identical charter party language, the Fifth Circuit has consistently refused to make the time charterer liable for longshoremen injuries caused by vessel crew negligence or vessel unseaworthiness.

The Fifth Circuit first analyzed this charter language in *D/S Ove Skou v. Hebert,* 365 F.2d 341 (5th Cir.1966). Like plaintiffs and Botelho Shipping, the shipowner in *Skou* argued that the time charter agreement contemplated delegation to the time charterer of responsibility for longshoremen injuries sustained aboard the vessel. The Fifth Circuit rejected this argument:

> The Charterer had the responsibilities, but only the responsibilities, of a time charterer under a traditional time charter. The typical clause, specifying that the captain shall be under the orders of the Charterers 'as regards employment and agency' and that 'charterers are to load, stow, and trim the cargo' *does not give to Time Charterer any operational control over these activities.* Rather, these charter party provisions are essentially a specification of the party—owner or charterer—upon whom the ultimate financial cost rests for any one or more of the activities.
>
> Although, the charterer is to secure and pay for such port activities as pilotage, towage, port charges, including arrangements for loading and discharging of cargo, such activities if conducted by the ship or its crew do not become those for which the time charter has an operational responsibility.... In the absence of circumstances which would give rise to a liability for actions taken by an independent contractor—none of which are present here—Time Charterer had no responsibility to Shipowner or to third persons including longshoremen for acts of omission or commission by the stevedores. There is nothing in *Ryan [Stevedoring Co. v. Pan Atlantic SS Corp.,*

350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) ] ... by which a time charterer is held to have warranted that persons performing activities for which a time charterer has the ultimate financial responsibility will perform their respective engagements in a workmanlike fashion. 365 F.2d at 351–52.

Although plaintiffs and Botelho contend that *Skou* has fallen into disfavor, the Fifth Circuit has repeatedly relied on *Skou* when construing identical time charterer language. In *Mallard v. Alumninum Co. of Canada Ltd.*, supra, the Fifth Circuit not only cited *Skou* with approval, but also comparatively cited *Fernandez,* the case relied on by plaintiffs and Botelho, juxtaposing the law of this Circuit with outside caselaw to the contrary:

> Generally, ... a time charterer, one who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise. The CBL charter states that ... 'the charterers are to load, stow and trim and discharge the cargo at their expense under supervision of the captain....' *D/S Ove Skou v. Hebert,* 365 F.2d 341, 351 (5th Cir.1966), cert. denied 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970), cited by appellees, holds that the third cited clause makes a charterer responsible for the costs of cargo handling, but in and of itself does not transfer operational responsibility from the owner. (Compare *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145 (2d Cir.1976) which upheld an indemnity claim by the vessel owner against the time charterer on the basis of this provision where the cause of the personal injury was directly related to loading or discharging cargo). In light of *Skou,* this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect.

634 F.2d at 242, n. 5.

The *Mallard* analysis demonstrates that the Fifth Circuit has taken note of the contrary charter agreement interpretation of the Second Circuit, but has nevertheless reaffirmed the interpretation of the earlier Fifth Circuit panel in *Skou.*

Similarly, in *Desormeaux v. Oceans Intl.,* 1979 A.M.C. 1962, 1965 (W.D.La. 1979), where a longshoreman sued the vessel owner and time charterer because of injuries sustained during cargo loading operations, the court granted the time charterer's motion for summary judgment. In so ruling, the court adopted the *Skou* construction of identical time charter language in the two cases (the same language that is at issue here). Like defendants here, the vessel owner in *Desormeaux* argued that the *Fernandez* construction, and not *Skou,* should apply. The court rejected this argument, explaining:

> It is clear that the Second Circuit and the Fifth Circuit interpret "Clause 8" differently. Although we respect the wisdom of the Second Circuit judges, we are more respectful of the wisdom of our own circuit judges, and accordingly, we will follow its construction of "Clause 8."

This Court can only conclude that the contract interpretation of *Skou,* and not *Fernandez* or *Turner,* is the law to be applied in this case. Therefore, this Court finds that Clause 8 of the Hyundai/Botelho time charter does not shift liability to Hyundai Merchant Marine Co. for plaintiff's alleged injuries.

Plaintiffs alternatively argue that other clauses of the time charter reflect the parties' intent to shift liability to Hyundai Merchant Marine Co. However, these arguments also fail. As noted, the Fifth Circuit has definitively held that only the clearest language in a time charter will suffice to rebut the presumption that the charter parties did not intend to shift responsibility for vessel crew negligence or vessel unseaworthiness to the charterer. *See Mallard,* supra, and *Kerr–McGee,* supra at 1343, reiterating the Circuit's "reluctance to find any shift of operational responsibility for personal injuries to the time-charterer absent clear language to that effect."

Plaintiffs note that Clause 2 of the time charter provides that the time charter will supply "extra fittings requisite for ... a

special cargo." From this, plaintiffs conclude that the parties intended to shift liability to the time charterer for negligently fitted slings. Not only is it unclear whether the slings used here constitute "extra fittings requisite for ... a special cargo", but also, as the Fifth Circuit noted in *Mallard* when construing identical language, "the ... clause may impose on the charterer the financial responsibility for providing dunnage of necessary quality without placing on him the obligation to pay damages for personal injury that the dunnage may cause."

Plaintiffs argue that time charterer liability was contemplated by Clause 10, authorizing the charterer to appoint a cargo supervisor. However, such language falls far short of the "clear statement" envisioned by *Mallard* and *Kerr–McGee*.

Plaintiffs' arguments about Clauses 6 and 7 are similarly unpersuasive. Clause 6 provides that cargo may be discharged in any place that charterers or their agents may direct. However, this clause merely gives the charterer control over where the cargo will be discharged, not *how* the unloading will be accomplished. Clause 7 provides that the reach of the holds shall be at the charterers disposal. However, again, this clause merely enables the time charterer to use the holds so that the vessel may serve as a cargo transport vehicle. The clause certainly does not shift operational control over the cargo loading and unloading process to the time charterer. The very facts of this case indicate that such control was divided between the vessel owner and the stevedores.

Given the solidly established Fifth Circuit jurisprudence of *Skou* and its progeny, the Court concludes that the time charter parties here did not intend to shift to Hyundai the responsibility for longshoremen injuries aboard the vessel. Because no party has succeeded in rebutting the presumption that, absent clear charter language to the contrary, the time charterer is not liable for vessel crew negligence and vessel unseaworthiness, Hyundai Merchant Marine Company's Motion for Summary Judgment is GRANTED.