**Lollie LOGWOOD, Wife of/and Gilbert Logwood**

v.

**APOLLO MARINE SPECIALISTS, INC., et al.**

Civ. A. No. 89–4785.

United States District Court, E.D. Louisiana.

July 29, 1991.

Joseph L. Montgomery, Metairie, La., A. Patrick Dehon, Jr., New Orleans, La., for plaintiff.

Michael J. Kincade, Metairie, La., Sherman G. Fendler, Don K. Haycraft, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

SEAR, District Judge.

### BACKGROUND

This is a maritime personal injury action brought under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Plaintiff Gilbert Logwood was employed by River Marine Contractors, Inc., ("River Marine") as a member of a longshore crew. Logwood alleges he was injured on December 26, 1986 while unloading cargo from the M/V GRETKE OLDENDORFF while she was docked in navigable waters in Chalmette, Louisiana. The accident allegedly occurred when a crane sling broke, causing suspended cargo to fall on Logwood's hand.

Defendant Rhenania Shipping Corp. ("Rhenania") was the owner of the M/V GRETKE OLDENDORFF at the time of the incident. Rhenania has filed a motion for summary judgment based upon principles enunciated in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) and cases thereunder governing shipowner liability for injuries to longshoremen under § 905(b).

Defendant Sealift, Inc. ("Sealift") has filed a motion to dismiss on the basis that Logwood's claim against it is time barred. Logwood filed his original complaint in this action on November 2, 1989, and superceded this with a supplemental and amending complaint filed December 22, 1989. A second supplemental and amending complaint was filed on February 20, 1991, naming Sealift for the first time as a defendant. Sealift contends that Logwood's claims against it are time-barred under the applicable three-year statute of limitations. 46 U.S.C.App. § 763a.[1] Sealift argues that the action against it was not tolled by the filing of the earlier complaints against its alleged joint tortfeasors, and that Logwood's second amending and supplemental complaint naming it as a defendant does not relate back under Fed.R.Civ.P. 15(c) to the time Logwood first filed a complaint. Logwood opposes Sealift's motion by arguing that the filing of its original complaint tolled the statute of limitations as to Sealift and that the requirements of Rule 15(c) for relation back are met. Alternatively, Logwood seeks a continuance to allow further discovery.

Sealift's motion was styled as one to dismiss. Sealift presented no materials with its motion outside the pleadings, with the exception of the summons that it was served. Logwood submitted with its opposition matters outside the pleadings, including the affidavit of its counsel, Joseph L. Montgomery, attesting in pertinent part as follows:

> Affiant further declared that while investigating the facts and potential parties relevant in this dispute in November and December of 1989 he was advised by Gilbert Logwood's employer (through Counsel) that Sealift, Inc. was the agent for the *M/V Gretke Oldendorf* [sic] at the time of Mr. Logwood's accident on December 26, 1986.
>
> Pursuant thereto, affiant made phone calls to Sealift, Inc. in Oyster Bay, Long Island, New York on November 27, 1989 and December 13, 1989. During those calls, affiant identified himself as Counsel for Gilbert Logwood, injured aboard the *M/V Gretke Oldendorf*, specified that he had been informed Sealift, Inc. was agent for the vessel at the time of

---

1. 46 U.S.C.App. § 763a provides:
   Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

Mr. Logwood's accident, and sought information concerning the vessel and its owners.

During neither call did Sealift, Inc., inform affiant that it was in fact the time charterer of the vessel at the time of the accident.

(references to attached exhibits omitted). Because Logwood has presented matters outside the pleadings, I treat Sealift's motion as one for summary judgment. Fed. R.Civ.P. 12(b)(6). The parties are not entitled to specific notice that I would treat this Rule 12(b)(6) motion as to which matters outside the pleadings were submitted as one for summary judgment. It is sufficient that 10 days have elapsed since the court accepted for consideration matters outside the pleadings to allow the parties to submit additional evidence.[2] *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195–96 (5th Cir.1988).

### ANALYSIS

#### A. *Sealift*

1. *Equitable Tolling of 46 U.S.C.App. § 763a*

Sealift argues that principles of equitable tolling are inapplicable to the limitations period provided in 46 U.S.C.App. § 763a. This was the holding in *Rogers v. Schlumberger Limited*, Civ. No. 84–734, slip op. (Sep. 30, 1985) (Collins, J.), the only case to which Sealift cites. However, in the only published opinion directly on point, the court concluded that Congress had not sought to disallow equitable tolling when it enacted § 763a. *Walck v. Discavage*, 741 F.Supp. 88, 90 (E.D.Pa.1990). The Fifth Circuit Court of Appeals, although not faced with the argument raised here, assumed that equitable tolling principles were applicable to claims otherwise time-barred under § 763a, in *Cooper v. Diamond M Co.*, 799 F.2d 176, 178 n. 3 (5th Cir.1986). *See also Davis v. Newpark Shipbuilding and Repair, Inc.*, 659 F.Supp. 155, 157 (E.D.Tex.1987) (Cobb, J.).

I need not decide whether or not equitable tolling applies under § 763a. Even if it does, this would not be an appropriate circumstance for its application. Equitable tolling applies principally when the plaintiff was actively misled about the cause of action by the defendant, was prevented in some extraordinary way from asserting his or her rights, or filed the same claim in the wrong forum. *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941 (1965); *School Dist. of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir.1981); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir.1978).

Logwood's first argument in favor of tolling the three-year statute of limitations as to defendant Sealift is that his timely filing of suit against alleged joint tortfeasors of Sealift should toll the statute of limitations against all other solidarily liable tortfeasors, as it would under Louisiana law. This is not among the grounds that may support equitable tolling of a federal statute of limitations. *Waguespack v. Aetna Life & Cas. Co.*, 795 F.2d 523, 527 (5th Cir.1986); *Davis*, 659 F.Supp. at 157. Thus, the result I reach is consistent with the result reached in *Rogers*, in which it was held that § 763a would not be tolled by the filing of suit against an alleged joint tortfeasor.

Logwood also argues that Sealift should not be allowed "to benefit from assertions made by its agents or employees to counsel for plaintiffs that it had never heard of the *M/V Gretke Oldendorf*...." This does raise an argument recognized by equitable tolling principles, namely that Sealift's actions actively misled plaintiff and prevented him from timely filing suit against it. However, the affidavit of plaintiff's counsel, viewed in the light most favorable to it, does not support an inference that Sealift actively misrepresented itself to Logwood's counsel. Plaintiff's counsel attested that he had been informed when suit was first filed that Sealift was the

---

**2.** Sealift has, in fact, submitted a reply memorandum that traverses the materials Logwood submitted with its opposition.

agent for the M/V GRETKE OLDENDORFF. He avers that he called Sealift twice, identified himself as Logwood's counsel, identified the incident and "specified that he had been informed Sealift" was agent for the M/V GRETKE OLDENDORFF at the time. Plaintiff's counsel does not attest that he asked Sealift whether or not it was also the time charterer of the vessel, or had any other relation to the vessel than agent. The only reasonable inference from his affidavit is that he did not ask these questions. Plaintiff now complains that Sealift should not benefit by its failure to offer up this information. However, Sealift's failure to reveal information that plaintiff's counsel did not seek was not an "affirmative misstatement" or an "active misrepresentation ... so misleading as to cause the plaintiff's failure to file suit." *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231 (5th Cir.1980). The plaintiff is not entitled to equitable tolling of § 763a.

## 2. *Relation Back Under Rule 15(c)*

■ Sealift also argues that Logwood cannot satisfy the requirement of Rule 15(c) so that his amended complaint naming Sealift would relate back to the time when his original or first amending complaint were filed. Relation back under Rule 15(c) requires satisfaction of four factors:

1) the basic claim must have arisen out of the conduct set forth in the original pleading;

2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its own defense;

3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and,

4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

The original and amending complaints set forth the same conduct; factor one is not at issue.

Sealift also does not contest whether or not it received such notice that it will not be prejudiced in maintaining its defense. Sealift's sole argument is that Logwood cannot demonstrate that Sealift must or should have known that, but for a mistake concerning identity, the actions would have been brought against it. Sealift argues that the contents of the conversations that Logwood's counsel attests he had with Sealift representatives in 1989 cannot have put Sealift on notice that it would be subject to suit, but for a mistake as to the identification of the time charterer. Specifically, Sealift argues that there was nothing in those conversations that would put a time charterer on notice that Logwood would sue the time charterer if he knew its identity. The only reasonable inference from the affidavit is that no mention was made of the identity of the time charterer or Logwood's counsel's desire to know it. Furthermore, Sealift argues persuasively that the mere fact of being a time charterer, who had no operational control over the vessel, would not in itself lead Sealift to believe that it would be sued for a personal injury that occurred on its clock if it were identified as the time charterer, so as to provide the requisite notice.[3]

Alternatively, Logwood asks for more time to conduct discovery, anticipating that the discovery responses of Rhenania will reveal whether or not Sealift had notice of the accident within the three year limitations period. My ruling already assumes that Sealift was informed of the accident

---

**3.** The Time Charter agreement between Rhenania and Sealift was a non-demise charter. ¶ 26. The agreement further provided, "Charterers are to provide necessary dunnage and shifting boards," ¶ 2, and "The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim, tally and discharge the cargo at their expense under the supervision of the Captain...." ¶ 8. In this circuit, such a time charter is held not to transfer operational control to the time charterer or generally to subject the time charterer to liability for personal injury. *See Mallard v. Aluminum Co. of Can., Ltd.*, 634 F.2d 236, 242 n. 5 (5th Cir.1981); *Roby v. Hyundai Merchant Marine*, 700 F.Supp. 316, 321 (E.D.La.1988) (Feldman, J.).

<sub></sub>

within three years of its occurrence, as this was the implication of Logwood's counsel's own affidavit. The Supreme Court has interpreted Rule 15(c) literally. *See Schiavone,* 106 S.Ct. at 2384. The language of Rule 15(c) requires notice of an action, not merely of an accident. Rule 15(c)(1) requires "such notice of the institution of the action...." Rule 15(c)(2), which we are here considering, requires notice that "the action would have been brought against the party." *See* 6A Wright, Miller & Kane, Federal Practice and Procedure § 1498 at 125 (2d ed. 1990) ("[T]he Supreme Court's strict interpretation of the other portion of Rule 15(c) in the Schiavone case suggests that here too it would rule that the technically correct or narrow interpretation should control.") The Fifth Circuit in *Honeycutt v. Long,* 861 F.2d 1346, 1350 (5th Cir.1988) suggested that informal notice might satisfy Rule 15(c). The notice for which it searched was "knowledge of the suit." *Id.* [4]

The ultimate burden at a trial would be on Logwood to justify its untimely complaint under the relation back doctrine. Having converted Sealift's motion to one for summary judgment, Logwood was bound to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Logwood has not done so. Therefore, defendant Sealift's motion to dismiss, treated as a motion for summary judgment, is granted.

### B. *Rhenania*

Logwood's unseaworthiness claim against Rhenania is explicitly barred by 33 U.S.C. § 905(b).

█ The standards applicable to the determination of whether a shipowner may be held liable to a longshoreman for negligence under § 905(b) were recapitulated in *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1036 (5th Cir.1983) (citing *Scindia,* 101 S.Ct. at 1622-26):

First, before turning over the ship to the stevedore, the owner has a duty to warn the longshoreman of hidden defects that would be known to the shipowner in the exercise of reasonable care. He must also exercise care to deliver to the stevedore a safe ship with respect to gear, equipment, tools, and work space. Second, the owner has a duty to avoid exposing the longshoreman to harm 'from hazards under the act or control of the vessel.' Third, even though the owner is generally relieved of responsibility for accidents which occur once the unloading process has begun, 'if [the stevedore's] judgment ... was so obviously improvident that [the owner], if it knew of the defect and that [the stevedore] was continuing to use it, should have realized the [defect] presented an unreasonable risk of harm to the longshoreman, ... in such circumstances [the owner] had a duty to intervene' and eliminate or neutralize the hazard.

With respect to what has been called the "first *Scindia* duty," the shipowner may be liable for negligence to a longshoreman injured unloading cargo if it knew or should have known of dangerous conditions in the cargo loading process that caused the longshoreman's injuries. *Harris v. Flota Mercante Grancolombiana, S.A.,* 730 F.2d 296, 299 (5th Cir.1984); *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110, 116 (5th Cir.1981); *Roby v. Hyundai Merchant Marine,* 700 F.Supp. 316, 319-320 (E.D.La. 1988) (Feldman, J.).

Summary judgment materials submitted by the parties establish the following: Logwood was employed by the stevedore, River Marine, who provided the longshore crew, including a foreman/leaderman, for the M/V GRETKE OLDENDORFF. Logwood and two other longshoremen were unloading cargo from hold # 3 at the time of the accident. No crewmember of the vessel went into hold # 3 to inspect the cargo before off-loading began, nor was a crew member present in the hold during off-loading. The cargo in hold # 3 consist-

---

**4.** Concededly, in *Honeycutt,* the only kind of knowledge that the defendant sought to be add-

ed could have had was knowledge of the suit, not mere knowledge of the accident.

ed of crates of tire rims. At least some of the crates had been "preslung" by a stevedoring crew in Rio de Janeiro, Brazil, meaning stowed with rope around it to facilitate discharge. A sling broke during unloading. Logwood was injured when he raised his arm to fend off a crate that swung back toward him. The area of the sling that broke was near the bottom of the crate to the side.

■ The Rhenania employee who investigated the accident, Cynthia A. Newman, speculated that only the tops of the crates and the top portion of the ropes with which the crates were preslung would have been visible. Newman's ex post investigation could not give her the necessary first-hand knowledge to establish that only the tops of the ropes were visible before the accident. Furthermore, the River Marine foreman, Roy H. Wagner, by affidavit attests that the cargo in hold #3 had shifted during its voyage. Wagner attests that after the accident he inspected the rope that had broken and that it was worn and frayed. Wagner opined that the rope may have frayed during the voyage because no dunnage was used between the layers of preslung crates, allowing the slings to chafe as the cargo shifted and moved during the voyage. Therefore, it has not been established that Logwood's accident was not caused by a dangerous condition existing prior to the off-loading operation of which Rhenania should, in the exercise of reasonable care, have had no knowledge. Accordingly,

The motion for summary judgment of defendant Rhenania Shipping Corp. is DENIED.

The motion to dismiss, treated as a motion for summary judgment, of defendant Sealift, Inc. is GRANTED.